UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Elaine L. Chao,
Secretary of Labor,

                      Plaintiff,                **Hon. Hugh B. Scott**

                                                  08CV267A

                        v.                      **Decision**
                                                    **&**
                                                 **Order**

Security Credit Systems, Inc.,
Angelo J. Travale, Jr.,

                      Defendants.
_____

Before the Court is the defendant's motion to compel discovery (Docket No. 14).

**Background**

The plaintiff, Elaine Chao, as Secretary of Labor ("Chao"), commenced this action against Security Credit Systems, Inc. and Angelo J. Travale, Jr. (referred to jointly as "SCS"). The complaint alleges that SCS, a debt collection agency, has violated various provisions of the Fair Labor StandardsAct, 29 U.S.C. §201 et seq., ("FSLA") in that it has failed to properly compensate employees for overtime work. (Docket No. 1 at ¶ ¶ 7-8). Generally, Chao alleges that although an SCS employee might punch in prior to the scheduled start of their shift, or punch out after the scheduled start of their shift, SCS's payroll software disregarded this additional time for payroll purposes.

Martin Murray ("Murray"), an investigator for the Department of Labor ("DOL")

1

interviewed several SCS employees in connection with his investigation of SCS' compensation practices. SCS contends that these interviews resulted in written and or recorded statements. (Docket No. 14 at ¶ 10). In paragraphs 7 and 8 of the Defendants' First Request for the Production of Documents, the defendants request that the plaintiff produce any and all documents relating to interviews secured during the investigation. The plaintiff has refused to produce the statements on the grounds that they are protected by the informant's privilege and the work product privilege. The defendants have also served interrogatories upon Chao requesting that the plaintiff identify all persons who were interviewed and gave statements. (Docket No. 14 at ¶ 24). Again, the plaintiff asserted the informant's and work product privileges in refusing to identify the individuals making such statements. The defendants contend that they cannot defend themselves against the claims asserted by the plaintiff if they cannot establish that the employees in question were not fully compensated. To do that, the defendants assert, they must be apprised of the identity of the employees and the substance of their statements.

The plaintiff argues that the defendant does not need to be provided with the identity or statements of employees interviewed during the investigation to properly defend the claims asserted in this case. The plaintiff notes that SCS has been charged with failing to pay overtime to its hourly employees. Further, according to Chao, SCS has been provided with a detailed explanation of how overtime damages have been calculated. (Docket No. 19 at page 6).

**The Informant's Privilege**

The informant's privilege protects "the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59 (1957). The privilege is not absolute; rather, the court must balance a litigant's need for the information against the public interest in preventing disclosure of the informant's identity. See id. at 60-61. Once the government asserts the informant's privilege, the opposing party bears the burden of showing a compelling need for the information sufficient to overcome the privilege. United States v. Sanchez, 908 F.2d 1443, 1451 (9th Cir.1990).

The privilege has often been upheld in use in cases brought under the FLSA. Mitchell v. Roma, 265 F.2d 633, 636 (3d Cir.1959)(The Third Circuit weighed the defendants' need for the employees' identities and their right to prepare their defense properly against the purposes of the privilege, keeping in mind the liberal civil discovery rules. Concluding that the "defendants' interest in being illuminated as to informers was not strong enough to overcome the privilege," the court held that the identities of the individuals who had given statements to the Department of Labor were not essential to a fair determination of the issues); Chao v. Local 54, Hotel Employees, Restaurant Employees Intern., 2001 WL 34113146 (D.N.J. 2001)(The Union does not need to know, for purposes of the defense of its case, which members spoke to the Department of Labor. The Court concludes that the Union's interest in learning the identities of the Nassau Inn Union members who provided information to the Department of Labor is not strong enough to overcome the informant's privilege, and keeping these members' identities protected from disclosure does not unduly prejudice the Union's right to prepare its defense.). Further, the informant's privilege applies whether the DOL solicited statements from an employee or the employee made a complaint to the DOL. Martin v. New York City Transit

Authority, 148 F.R.D. 56, 63 (E.D.N.Y.,1993). The informant's privilege applies to current as well as former employees of a company whose workers have communicated with the DOL. In Hodgson v. Charles Martin Inspectors of Petroleum, Inc., 459 F.2d 303, 306 (5th Cir.1972), the court noted that the possibility of retaliation with respect to former employees is not remote or speculative.

> First, it is a fact of business life that employers almost invariably require prospective employees to provide the names of their previous employers as references when applying for a job. Defendant's former employees could be severely handicapped in their efforts to obtain new jobs if the defendant should brand them as 'informers' when references are sought. Second, there is the possibility that a former employee may be subjected to retaliation by his new employer if that employer finds out that the employee has in the past cooperated with the Secretary [of Labor]. Third, a former employee may find it desirable or necessary to seek reemployment with the defendant. In such a case the former employee would stand the same risk of retaliation as the present employee.

Charles Martin, 459 F.2d at 306. Wirtz v. B.A.C. Steel Products, Inc., 312 F.2d 14 (4th Cir.1962); Dole v. International Association Managers, Inc., 1991 WL 270194 at *2, (D.Ariz.1991); Brock v. Czerwein, 1986 WL 12563 at *1 (D.R.I.1986); Donovan v. First Federal, 1982 WL 2182, (S.D.Iowa 1982); Donovan v. Giguere's Supermarket, Inc., 1981 WL 2328 at *1, (D.Me.1981); Marshall v. Carlson Stapler & Shippers Supply, Inc., 1978 WL 1616, (D.Neb.1978); Marshall v. J.F. O'Neill Packing Co., 1977 WL 1680, (D.Neb.1977); Hodgson v. Sullivan, 1972 WL 971 (D.Kan.1972).

The defendants assert that the privilege should not be applied in this case because the SCS maintains that employees were paid for all work performed and that any time before or after

4

their scheduled shift was not time spent working, or was *de minimus* in nature. Thus, SCS wants to depose any employees who contend that they were not paid for work the performed. (Docket No. 20 at page 7). The plaintiff notes that the defendant's own records demonstrate each instance when an employee either punched in prior to the scheduled start of their shift, or punched out after the scheduled end of their shift. Thus, the defendants can identify each employee and each instance supporting the claims asserted in the complaint. The defendant does not appear to dispute that its payroll software routinely disregarded any time recorded on a time card that was prior to, or subsequent to, the employee's scheduled shift. It appears that the defendant maintains that in each such instance, each such employee was either not working, or performing duties that were *de minimus*, and therefore need not be compensated. Such a defense could theoretically be asserted in every FLSA claim based upon a failure to pay overtime compensation, thereby (pursuant to the defendant's theory) negating the applicability of the informant's privilege in all such cases. In essence, the defendant would view each recorded instance as an *ad hoc* event, in which the activities of the employee are to be analyzed to determine whether they were work related, and if so, whether the benefit to SCS was more than *de minimus* so as to require compensation. Such a defense appears to be inconsistent with the currently unrebutted assertion that SCS's payroll software disregarded the additional time logged by employees in ***all*** such instances without such individualized scrutiny.

The informant's privilege serves a significant public service encouraging citizens to report illegal activity. See Brock v. DialAmerica Marketing, Inc., 1986 WL 28913, at *4 ("Implicit in th[e] purpose behind the privilege is that without guaranteed anonymity, informants would fear reprisal and not report illegal behavior."). The Court is not persuaded by the

5

defendant's argument that they "cannot fully understand the allegations against them." (Docket No. 20 at page 7). The defendants have not met their burden to establish that SCS cannot properly defend itself in this action without disclosure of the identities and statements of the employees. Indeed, the claims in this case appear to be the very type of claims for which the informant's privilege has been upheld in the past. See Chao v. Raceway Petroleum, Inc., 2008 WL 2064354 (D.N.J. 2008)(Here, the knowledge sought from Raceway's current and former employees – whether or not they worked overtime hours for which they were not compensated – is just as much within the knowledge of [Raceway] as it is within the knowledge of the [Raceway] workers). See also Wirtz v. B.A.C. Steel Products, Inc., 312 F.2d 14 (4th Cir.1962)(The courts have not only denied the names of the informers but also the statements in the government's possession. Although the privilege is not absolute, the defendants have shown no special circumstance which would justify withdrawing the qualified privilege from the government. This is particularly true of this type of case. The average employee involved in this type of action is keenly aware of his dependence upon his employer's good will, not only to hold his job but also for the necessary job references essential to employment elsewhere. Only by preserving their anonymity can the government obtain the information necessary to implement the law properly.); Dole v. International Association Managers, Inc., 1991 WL 270194 at *2-4, (D.Ariz.1991) (Neither the source and nature of any complaints to the Department nor the motivation of the complainants, however, is directly relevant to the merits of plaintiff's allegations. Defendants remain free to obtain discovery, including taking the depositions of present and former employees concerning matters relevant to the allegations, such as the employee's status, hours worked and wages paid.); Brock v. Czerwein, 1986 WL 12563 at *1

(D.R.I.1986)(That the Secretary of Labor has disclosed the names of those affected by the alleged violations does not obligate the Secretary to reveal the informers' identities. The Defendant's desire to avoid the expense of depositions is not the type of substantial need which overcomes the privilege.).[1]

The Court is similarly unpersuaded by the defendants' assertion that compelling the DOL to produce the statements is required because it is "more efficient" than conducting independent interviews themselves. Upon consideration of all the facts and circumstances in this case, such a claim of efficiency on its own is not "weighty enough to overcome the public policy against disclosure." Mitchell, 265 F.2d at 637; see also Hodgson v. Charles Martin Inspectors of Petroleum, Inc., 459 F.2d 303, 207 (5th Cir.1972) ("That [disclosure of] the statements might lead to other evidence and that depositions would be expensive show that the statements would facilitate defendant's investigation but such facilitation is not a requirement for fundamental fairness to the defendant.").

The Court declines to direct that the statements be produced with the names of the employee redacted inasmuch as the defendant has not demonstrated that the identity of the employee could not be ascertained from the content of the statement and because the defendants can undertake their own discovery to obtain information relating to the nature of the activities of the employees during the time periods in question. In the instant case, the complaint lists 116

---

[1] The Court declines to follow Brennan v. Automatic Toll Systems, 60 F.R.D. 195, 196 (S.D.N.Y. 1973) which is relied upon by the defendants. There, the Court held that "[l]imitations on defendant's discovery of plaintiff's case may have had some validity in the past, but the law now seeks to assure the individual defendants that a trial in the Federal courts is a search for justice. ... The government's claim of 'informant's privilege' in a civil case is without substantial basis in modern jurisprudence." Brennan appears to be inconsistent with the vast majority of cases discussing the informant's privilege.

SCS employees who may have been affected by the purported payroll practice. SCS is free to review the time records of these employees to determine which employees had punched in prior to, or punched out after, a scheduled shift and were not compensated for that time. Further, SCS is free to interview or depose those employees regarding the nature of any activities performed by the employee during those time periods. The Court is not persuaded that SCS will find it necessary to depose all 116 of these employees. Aided by a review of time records, the defendants can adequately conduct their own investigation as to the intended defense.

Because the information sought is protected by the informant's privilege, the motion to compel disclosure of the identities and statements of SCS employees who were interviewed by the DOL is denied.[2]

**Amended Scheduling Order**

Both parties have expressed a need for a modification of the dates in the scheduling order in this matter. In light of the above, the following dates shall apply with respect to the remaining pretrial proceedings in this matter:

1. The referral to mediation shall terminate on **March 31, 2010**. In the event that settlement is not reached, the case will progress toward trial, as scheduled below. The referral of this case to mediation will not delay or defer other dates contained in this Scheduling Order and has no effect on the progress of the case toward trial.

2. All discovery in this case shall conclude on **November 30, 2009**. All motions to compel shall be due at least **30 days prior** to that discovery cutoff date.

3. The plaintiff shall identify experts and provide written reports in compliance with

---

[2] In light of the Court's holding that the informant's privilege applies in this case, the Court does not address whether the attorney work product privilege would also shield the information from disclosure.

Rule 26(a)(2), as amended in 1993, no later than **October 1, 2009**; the defendant shall identify experts and provide written reports in compliance with Rule 26(a)(2), as amended in 1993, no later than **November 16, 2009** See Rule 26 of the Local Rules for the Western District of New York as amended effective December 1, 1994. All expert discovery shall be completed on or before **November 30, 2009.**

4. In the event settlement is not effectuated through mediation, dispositive motions, if any, shall be filed no later than **February 26, 2010**.

5. No extension of the above cutoff dates will be granted except upon written joint motion, filed prior to the cutoff date, showing good cause for the extension.

Counsel's attention is directed to Fed. R. Civ. P. Rule 16(f) calling for sanctions in the event of failure to comply with any direction of this Court.

So Ordered.

*/s/ Hugh B. Scott*
United States Magistrate Judge
Western District of New York

Buffalo, New York
June 19, 2009