UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**ELAINE L. CHAO**, Secretary of Labor,
United States Department of Labor

                          Plaintiff,                **STATEMENT OF UNDISPUTED**
vs.                                                       **MATERIAL FACTS**

                                                              Civil Action No. 08-cv-00267

**SECURITY CREDIT SYSTEMS, INC.,** and
**ANFELO J. TRAVALE, JR.,** Individually,

                          Defendants.

---

        Defendants, Security Credit Systems, Inc. ("Security Credit") and Angelo J. Travale, Jr. ("Travale") (collectively referred to herein as "Defendants"), submit this Statement of Undisputed Material Facts as to which there are no genuine issues to be tried pursuant to Rule 56.1(a) of the Local Rules of Civil Procedure of the Western District of New York.

        1.        Defendant Security Credit is a collections agency located 622 Main Street, Buffalo, New York.  Affidavit of James N. Schmit, Esq., sworn to June 30, 2010 ["Schmit Aff."] ¶13; Exhibit ["Exh."] E at 13.

        2.        Security Credit undertakes collections of overdue accounts for a number of businesses including retail corporations, financial institutions, medical facilities, community colleges and universities.  Schmit Aff. ¶13; Exh. E at 10-13.

        3.        Defendant Travale is an individual and the president of Security Credit.  His job functions are to oversee Security Credit's various departments including sales, information technology, customer service, client relations and the collections department.  Schmit Aff. ¶13; Exh. E at 10, 14-15.

4.  Security Credit employs a staff of collectors, as well as clerical, sales and marketing employees. Schmit Aff. ¶13; Exh. E at 14-16. All hourly employees who perform clerical, sales, or marketing work manually record their work hours on sign-in sheets. Schmit Aff. ¶13; Exh. E at 77-78; Schmit Aff. ¶14; Exh. F at 47-48. Collectors in training also manually record their time using sign-in sheets. *Id*. Hourly employees who work in the clerical, sales and marketing departments and who manually record their time are not the subject of the instant lawsuit. Schmit Aff. ¶17; Exh. I at 19.

5.  The collectors job is to telephone debtors in an effort to recover money for the repayment of debts owed to various Security Credit clients. Schmit Aff. ¶14; Exh. F at 39. Their job duties consist of calling debtors on the telephone, counseling them about their debt, and attempting to work out a repayment schedule. *Id*.

6.  Mary Ann Robson is the office manager for Security Credit. Schmit Aff. ¶14; Exh. F at 8. Her job duties include supervising all collectors employed by Security Credit. Schmit Aff. ¶14; Exh. F at 38. Ms. Robson has held this position for the last eighteen years. Schmit Aff. ¶14; Exh. F at 13.

7.  The vast majority of Security Credit collectors work a set schedule. On Mondays, collectors work from 10:00 a.m. to 7:00 p.m. Schmit Aff. ¶14; Exh. F at 14-16. On Tuesdays, Wednesdays and Fridays collectors work from 8:00 a.m. to 4:30 p.m. Schmit Aff. ¶14; Exh. F at 14-16. On the first two Thursdays of every month, collectors work from 8:00 a.m. to 4:30 p.m. *Id*. On the last two Thursdays of every month, collectors who have not reached their individual collection goals for that month work from 10:00 a.m. through 7:00 p.m. *Id*. If a collector has reached his or her individual collection goal for the month, they work from 8:30 a.m. through 4:30 p.m. *Id*.

8. Only two Security Credit collectors, both of whom work part-time for medical reasons, work a different set of hours than those described above. Schmit Aff. ¶14; Exh. F at 79. At no time has a collector from Security Credit asked Ms. Robson for permission to work a different schedule, nor has a collector ever requested permission from Ms. Robson to work overtime. Schmit Aff. ¶14; Exh. F at 90.

9. Each collector is permitted two fifteen minute breaks and one thirty minute lunch period during the 8:00 a.m. to 4:30 p.m. shift. Schmit Aff. ¶14; Exh. F at 77-78; Schmit Aff. ¶16; Exh. G, Robson 3. Collectors who work from 10:00 a.m. through 7:00 p.m. receive a thirty minute lunch period, two fifteen minute breaks and an additional thirty minute dinner period. *Id.* The two fifteen minute breaks are paid breaks, while the thirty minute lunch or dinner periods are not paid. *Id.*

10. Deposition testimony was taken from a number of former Security Credit employees including Linda Fazio, Garrett King and Dennis Lojeck. Schmit Aff. ¶19-21; Exh. K-M. Ms. Fazio, Mr. King and Mr. Lojeck all testified that they would always take the full thirty minutes that they were allowed for a lunch or dinner period. Schmit Aff. ¶19; Exh. K at 19; Schmit Aff. ¶20; Exh. L at 23; Schmit Aff. ¶21; Exh. M at 7-8. They never preformed work during these periods. *Id*.

11. Security Credit uses a "hand reader" style of time clock to record time for all collectors. Schmit Aff. ¶14; Exh. F at 46. This time clock is used to record the time that collectors arrive at the beginning of their shift and leave at the end of their shift. It is also used to record the time collectors take breaks as well as lunch and dinner periods. Schmit Aff. ¶15; Exh. G, Robson 3, 6. Since 2003, and at all times relevant herein, all collectors have been required to use the time clock to record their time. Schmit Aff. ¶14; Exh. F at 50.

12. Collectors are instructed to "punch in" when they arrive at the beginning of the day and to "punch out" when they leave at the end of the day. Schmit Aff. ¶14; Exh. F at 48-50. They are also required to punch in and out for their morning and afternoon breaks, and their lunch and/or dinner breaks. *Id*.

13. The time clock generates a computerized record of the hours recorded by each collector. Schmit Aff. ¶16; Exh. H at 93. These records are referred to as "Archived Time Reports." Schmit Aff. ¶17; Exh. I at 7; Schmit Aff. ¶15; Exh. G at Robson 5.

14. When initially hired, each collector receives a packet of materials from Security Credit. Schmit Aff. ¶14; Exh. F at 74-76. Included in those materials are specific directions and instructions regarding the time clock system and each employee's obligation to accurately record their time. Schmit Aff. ¶15; Exh. G at Robson 3, 6. In that packet of materials, all collectors are given a memorandum regarding weekly work hours. Schmit Aff. ¶15; Exh. G at Robson 3. Collectors are provided a list of their scheduled work hours and they are expressly told that they are not to "punch in" early or "punch out" late without prior approval of a supervisor. *Id.*

15. One of the memoranda provided to collectors at the start of their employment specifically states:

> Nonexempt employees should accurately report the time they begin and end their work, as well as the beginning and ending time of each meal period. They should also record the beginning and ending time of any split shift or departure from work for personal reasons. Overtime work must always be approved before it [is] performed. Schmit Aff. ¶15; Exh. G at Robson 6.

Employees are also instructed that if they experience any problems with the time clock, or if they need to deviate from their normal work hours, they are to notify a supervisor. Schmit Aff. ¶15; Exh. G at Robson 6.

4

16. Security Credit has issued written disciplines and suspensions to collectors who have failed to accurately record their time using the hand reader. Schmit Aff. ¶13; Exh. E at 164-167.

17. During her deposition, Ms. Robson testified that collectors are never required to work overtime and that the collectors do not work overtime. Schmit Aff. ¶14; Exh. F at 90. Ms. Robson further testified that at no time during the approximately eighteen years that she has supervised Security Credit collectors has a collector requested to work overtime. *Id*. Mr. Travale also testified that collectors are not required to work, do not work, and are never given approval to work overtime. Schmit Aff. ¶13; Exh. E at 160.

18. Ms. Robson also testified that aside from one or two instances where an employee's jewelry or the size of an employee's hand prevented the employee from punching in or there was a mix-up with the application of a sick day or vacation day, which instances were remedied by Security Credit, no employees have ever contacted her and questioned the accuracy of the Archived Time Reports. Schmit Aff. ¶14; Exh. F at 93-96, 98-99. Ms. Robson also testified that, in the eighteen years she has worked as a supervisor for Security Credit, no employee has ever asked to review their time reports. Schmit Aff. ¶14; Exh. F at 99.

19. All of the collectors, with the exception of those in training, work on the fifth floor. Schmit Aff. ¶14; Exh. F at 8. Ms. Robson's office is also located on the fifth floor. Schmit Aff. ¶14; Exh. F at 20. On Mondays and the last two Thursdays of every month, Ms. Robson works from approximately 7:30 a.m. until 7:00 p.m. Schmit Aff. ¶14; Exh. F at 9-10. On Tuesdays, Wednesdays, Fridays and the first two Thursday of every month, Ms. Robson works from approximately 7:30 a.m. until 4:30 p.m. *Id*. Ms. Robson is the first person to arrive on the fifth floor of Security Credit every morning. Schmit Aff. ¶14; Exh. F at 37.

20. At approximately five minutes before 8 a.m. on Tuesdays, Wednesdays, Fridays and the first two Thursdays of the month (or 10:00 a.m. on Mondays and the last two Thursdays of every month) Ms. Robson or another Security Credit supervisor plugs in the time clock and employees are given access to the hand reader to record the time of their arrival. Schmit Aff. ¶14; Exh. F at 147.

21. At approximately 4:30 p.m. on Tuesdays, Wednesdays, Fridays and the first two Thursdays of every month (or 7:00 p.m. on Mondays and the last two Thursdays of every month) Ms. Robson patrols the fifth floor, checks to see that all employees have punched out, and unplugs the time clock. Schmit Aff. ¶14; Exh. F at 149. Ms. Robson testified that at the end of the work day, most employees are standing in line five minutes prior to their scheduled end time, waiting to punch out and leave. Schmit Aff. ¶14; Exh. F at 140.

22. Ms. Fazio, Mr. King and Mr. Lojeck all testified that they would finish work at 4:30 p.m. (or at 7:00 p.m. depending upon the day) and would then wait in line to punch out. Schmit Aff. ¶19; Exh. K at 18-19; Schmit Aff. ¶20; Exh. L at 23-24; Schmit Aff. ¶21; Exh. M at 7-9. All three testified that there would regularly be a line of collectors waiting to punch out at the end of every shift, and that each employee would stop work at 4:30 p.m. or 7:00 p.m. depending upon the day, and wait in line for a few minutes to punch out. *Id.*

23. All Security Credit collectors use an automated computer system and phone system to perform their job duties. Schmit Aff. ¶14; Exh. F at 24. Security Credit's automated computer system keeps track of clients, amounts owed, amounts paid, and all communications between debtors and collectors. Schmit Aff. ¶14; Exh. F at 24. All collectors have a desk, a phone and a computer equipped with this system. *Id.*

24. Security Credit's computer system manages the collections accounts by displaying to the collectors the debtors to be called and the amount owed by each debtor. Schmit

6

Aff. ¶14; Exh. F at 24.  The computer system also keeps of record of prior conversations between the debtor and various collectors, so that the collector placing the phone call is up to date regarding the status of the account.  *Id*.

25.   Security Credit's computer system also contains skip tracing software.  Schmit Aff. ¶14; Exh. F at 61.  Skip tracing software assists collectors in finding debtors' contact information.  *Id.*  In addition, if a collector needs to send a letter to a debtor, the collector uses the computer system to request that a specific letter be generated.  Schmit Aff. ¶14; Exh. F at 100-101.  That message would be sent to an employee in Security Credit's clerical department, who would generate the letter.  *Id.*

26.   Collectors cannot perform their job duties, such as making calls and managing their accounts, without access to the computer system.  Schmit Aff. ¶14; Exh. F at 100-101.  Collectors use an entirely paperless system in managing collection accounts.  Schmit Aff. ¶14; Exh. F at 39.   All of the information which the collectors need to perform their jobs is contained on the computer system.  *Id*.  When collection accounts are acquired, Security Credit's computer system automatically distributes the accounts evenly to collectors throughout the office.  *Id.*

27.   Security Credit physically shuts down access to its computer system on the fifth floor at the end of every collection shift.  Schmit Aff. ¶14; Exh. F at 42, 110-111; Schmit Aff. ¶13; Exh. E at 104-105.  Therefore, all collectors' computers are shut down at 4:30 p.m. on Tuesdays, Wednesday, Fridays and the first two Thursdays of every month.  Schmit Aff. ¶14; Exh. F at 42, 110-111.  On Mondays and the last two Thursdays of every month, all collectors' computers are shut down at 7:00 p.m.  Schmit Aff. ¶14: Exh. F at 42, 110-111.  After those times, collectors are not permitted access to the computer system.  *Id*.

28.   After the collectors' computers are shut down at the end of each shift, they are not again turned on until five minutes prior to the beginning of the collectors' shift the following day.

Schmit Aff. ¶14; Exh. F at 42, 110-111.  In sum, collectors have no access to Security Credit's computer system outside their scheduled work hours.  *Id*.

29. In addition, collectors have virtually no access to Security Credit's telephone system outside of their scheduled work hours.  Schmit Aff. ¶14: Exh. F at 42-43.  At 7:00 p.m. on Mondays and the last two Thursdays of every month, and at 4:30 p.m. on Tuesdays, Wednesdays, Fridays and the first two Thursdays of every month, Security Credit's entire telephone system is placed on night mode.  Schmit Aff. ¶14: Exh. F at 42-43; Schmit Aff. ¶13; Exh. E at 109-111.  When the telephones are in night mode, all calls are automatically transferred to an automated answering service that states that the office is closed and instructs the caller to call back during Security Credit's normal business hours.  Schmit Aff. ¶14; Exh. F at 43.

30. At approximately twenty minutes before the collectors' shifts are to begin the next day, phones are taken out of night mode and are answered by the clerical department.  Schmit Aff. ¶14; Exh. F at 43-44.  No calls are transferred to the collection floor until 8:00 a.m.  *Id*.  Thus, any calls from debtors to collectors which are placed prior to 8:00 a.m. or after either 4:30 p.m. or 7:00 p.m., depending upon the day of the week, receive either an automated voice message or are transferred to the clerical department.  Schmit Aff. ¶14; Exh. F at 42-44.  As a result, collectors are unable to speak with debtors outside of their scheduled shift hours.  *Id*.

31. In addition, the federal Fair Debt Collection Act does not allow collectors to contact debtors prior to 8:00 a.m. or after 7:00 p.m.  Schmit Aff. ¶14; Exh. F at 41; Schmit Aff. ¶13; Exh. E at 109-110.  Therefore, collectors cannot perform their primary job function, calling debtors, before 8:00 a.m. or after 7:00 p.m.  *Id*.

32. None of the collectors employed by Security Credit have email addresses.  Schmit Aff. ¶14; Exh. F at 62, 29.    All client correspondence is handled by the customer service department.  Schmit Aff. ¶13; Exh. E at 111.

8

33. Prior to the commencement of the present action, Department of Labor investigator Martin Murray conducted an investigation of Security Credit's pay practices. Schmit Aff. ¶17; Exh. I at 6. Mr. Murray investigated Security Credit's pay practices only with respect to collectors who use the time clock to punch in and out. Schmit Aff. ¶17; Exh. I at 19. Therefore, Mr. Murray's subsequent calculation of alleged unpaid wages includes only wages with respect to collectors listed in Exhibit A and Amended Exhibit A to the Secretary's Complaint. *Id*.

34. Over the course of this investigation, Mr. Murray interviewed between twenty-five and thirty current and/or former Security Credit employees. Schmit Aff. ¶17; Exh. I at 6. Plaintiff refused, and continues to refuse, to provide the names of such employees or copies of any witness statements produced as a result of Mr. Murray's investigation. Schmit Aff. ¶17: Exh. I at 11-12.

35. Mr. Murray also examined Security Credit's payroll records and Archived Time Reports. Schmit Aff. ¶17: Exh. I at 7. Security Credit's payroll records are based upon a bi-weekly pay period. Schmit Aff. ¶17: Exh. I at 13.

36. Investigator Murray alleged, on the basis of these witness statements and documents, that current and former Security Credit collectors have regularly worked more than forty hours in a week, but were not compensated at one and a half times their regular rate of pay for those hours allegedly worked in excess of forty. Schmit Aff. ¶17: Exh. I at 12.

37. Specifically, Mr. Murray testified that some of the Archived Time Reports for collectors recorded time in excess of forty hours in a week or eighty hours in a two-week pay period, but that collectors were not paid for more than eighty hours of work in any given two-week pay period. Schmit Aff. ¶17: Exh. I at 13-14.

38. However, there is no indication, nor has any proof been offered by Plaintiff, that collectors actually worked during any time in excess of forty hours per week which may have

9

been recorded on the Archived Time Reports. Schmit Aff. ¶17: Exh. I at 14, 16-17. In reality, collectors' schedules, the Archived Time Reports (indicating only that a collector may punch in a few minutes prior to their scheduled start time or a few minutes after their scheduled end time), the Fair Debt Collection Act, and the fact that collectors have virtually no access to Security Credit's computer system, phone system and time clock before or after their regularly scheduled shifts, indicates that work could not have been performed outside of the regularly scheduled shifts and any work that may have been performed was *de minimis* at most. Schmit Aff. ¶14; Exh. F at 14-16, 24, 41-44, 61, 100-101, 147-149; Schmit Aff. ¶13; Exh. E 109-110.

39.     Further, at all times relevant herein, Security Credit has maintained a policy that all overtime work must be approved before it is performed. Schmit Aff. ¶15; Exh. G at Robson 6. In the past eighteen years, not a single collector has asked to perform overtime work, or has informed Security Credit that they did in fact perform overtime work, or work outside of their scheduled shift. Schmit Aff. ¶14; Exh. F at 90; Schmit Aff. ¶13; Exh. E at 160.

40.     Also problematic is that Mr. Murray purported to calculate alleged back wage liability by reviewing only the Archived Time Reports for the pay period ending on March 24, 2007. Schmit Aff. ¶17: Exh. I at 14; Schmit Aff. ¶18; Exh. J at Murray 1. Further, Mr. Murray reviewed the records of only approximately sixty current and former Security Credit collectors who worked during that pay period. Schmit Aff. ¶17: Exh. I at 18-19. He did not examine the records of every collector who worked that pay period. Schmit Aff. ¶17: Exh. I at 19-20.

41.     In determining back wages allegedly due, Mr. Murray looked at the first entry on the Archived Time Report and the last entry on the Archived Time Report for the approximately sixty collectors he studied over the single pay period ending on March 27, 2007. Schmit Aff. ¶17: Exh. I at 26-28; Schmit Aff. ¶18; Exh. J at Murray 1.

42.     Mr. Murray then computed the time from the first entry on the Archived Time Report through the last entry on the Archived Time Report and deducted any breaks, including meal periods, which were twenty minutes or longer in duration.  Schmit Aff. ¶17; Exh. I at 27-29, 31; Schmit Aff. ¶18; Exh. J at Murray 1.  Therefore, whenever an employee happened to punch in ten minutes before the end of his or her lunch or dinner period, the meal period was counted as time worked, regardless of the fact that the employee actually took a thirty minute meal period and no work was performed during that time.  Schmit Aff. ¶19; Exh. K at 19; Schmit Aff. ¶20; Exh. L at 23; Schmit Aff. ¶21; Exh. M at 7-8.

43.     Mr. Murray considered all of the sixty collectors' Archived Time Reports from the single pay period, discounted the collector with the highest amount of recorded time on the Archived Time Reports and discounted the collector with the lowest amount of recorded time on the Archived Time Reports.  Schmit Aff. ¶17: Exh. I at 34-35.   Based upon the collectors remaining, Mr. Murray then averaged the amount of time, per collector, recorded on the Archived Time Reports beyond forty hours in a week.  Schmit Aff. ¶17: Exh. I at 34-35.   Mr. Murray claims that an average of fifty minutes per day (or one hundred minutes per two-week pay period) was recorded on the Archived Time Reports, but was not paid to the collectors.  Schmit Aff. ¶17: Exh. I at 34-37.

44.     Based upon these calculations, which included only a fraction of collectors who worked during the single pay period, Mr. Murray calculated his entire alleged back wage obligation from 2005 through the present.  Mr. Murray, for some reason which remained unexplained notwithstanding repeated questions at his deposition, credited every single current and former collector who worked for Security Credit from 2005 through the present with one hundred minutes of overtime in every pay period where the collector was paid for seventy-six hours or more of work.  Schmit Aff. ¶17: Exh. I at 39-40.

11

45.     The Fair Labor Standards Act makes clear that only employees working in excess of forty hours per week are entitled to overtime compensation.  It is entirely unclear why Mr. Murray decided to award one hundred minutes of overtime compensation to all employees who were paid for seventy-six hours or more of work in any given pay period.  Schmit Aff. ¶17; Exh. I at 40-44.  In fact, even if Plaintiff could prove that the employees actually performed work for those one hundred minutes, those who worked fewer than seventy eight hours and twenty minutes in a pay period would not be entitled to overtime compensation since they would not exceed forty hours of work per week.  *Id*.

46.     In sum, Mr. Murray purports that any Security Credit collector who worked from 2005 through the present and who was paid for seventy-six hours or more of work in a two week pay period would automatically be entitled to overtime compensation for that week.  Schmit Aff. ¶17: Exh. I at 40-41.  Mr. Murray comes to this conclusion even though his own investigation indicated that collectors allegedly worked an average of only one hundred additional minutes per pay period.  Schmit Aff. ¶17: Exh. I at 34-37.  Not only are Mr. Murray's calculations inaccurate, but they defy both logic and the requirements of the Fair Labor Standards Act.  Schmit Aff. ¶17: Exh. I at 44-49.

47.     Based upon these very calculations, on April 2, 2008, Plaintiff commenced this action in United States District Court, Western District of New York alleging that Defendants' failed to properly compensate employees pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 *et seq*.  Schmit Aff. ¶3; Exh. A.  Specifically, in the Complaint, Plaintiff alleges that from April 2005 through the present, Defendants failed to compensate employees for overtime worked pursuant to Sections 7 and 15(a)(2) of the Fair Labor Standards Act.  *Id*.  Plaintiff further alleges that Defendants violated Sections 11(c) and 15(a)(5) of the FLSA by

failing to make, keep and preserve adequate and accurate records of their employees and their wages, hours, and terms and conditions of employment.  *Id.*

48.     Exhibit A attached to Plaintiff's Complaint purported to name approximately 116 former and current Security Credit employees who allegedly have not received adequate overtime compensation under the FLSA.  Schmit Aff. ¶3; Exh. A.  All 116 employees, with the exception of one, are or were collectors for Security Credit and used the time clock to record their working time.  *Id.*

49.     On or about June 16, 2008, Defendants filed and served their Answer to Plaintiff's Complaint.  Schmit Aff. ¶4; Exh. B.  Defendants denied all material allegations contained in the Complaint and affirmatively stated that: (1) Security Credit has paid all employees in Exhibit A all remuneration due and owing to them for actual hours worked, including overtime hours; (2) under federal law, Security Credit was not obligated to compensate employees named in Exhibit A who voluntarily came in before their regular starting time or remained after their regular ending time since they did engage in work during those time periods; (3) any work that was performed by employees listed in Exhibit A either before or after their regular starting time or after their regular ending time was so negligible that it was *de minimis* and, therefore, not compensable under the FLSA; and (4) Security Credit lacked actual or constructive knowledge that any employees named in Exhibit A were working overtime, and therefore, cannot be liable for overtime compensation under the FLSA.  *Id.*

50.     On or about April 7, 2010 Plaintiff filed a Complaint with Amended Exhibit A.  Schmit Aff. ¶10; Exh. C.  The complaint contained no different or additional allegations.  Schmit Aff. ¶10; Exh. C.  The only change contained therein was the inclusion of eighty-three additional current and former employees of Security Credit in an Amended Exhibit A.  *Id.*

51.     On April 26, 2010, Defendants filed an Amended Answer to the Amended Complaint.  Schmit Aff. ¶11; Exh. D.  Defendants denied all material allegations contained in the Amended Complaint, including all allegations relating to the eighty-three new individuals included on Exhibit A.  *Id*.  Defendant also asserted the same affirmative defenses raised in the original Answer with regard to the additional eighty-three current and former employees now named in Amended Exhibit A.  *Id.*

52.     Plaintiff purports that overtime is owed because over a single pay period in March of 2007, a fraction of collectors had time recorded on the Archived Time Reports which totaled over eight hours in a workday.  However, this extra time consisted only of a few minutes prior to the employees scheduled start time or a few minutes after the employees scheduled end time, or instances where an employee punched in early from a thirty minute lunch or dinner period, during which time no work was performed.  Indeed, the Department of Labor has issued regulations which expressly acknowledge that when time clocks are used, variances between clock records and actual hours worked cannot be avoided, and early or later punching may be disregarded.  *See* 29 CFR §785.48(a).

In reality, no additional compensation is owed because collectors were not performing work during this time.  As described in detail above, collectors could not perform their job duties outside of their scheduled work hours.  In addition, all collectors were given and would take, an unpaid lunch and/or dinner period during which time no work was performed, regardless of when the collectors may have actually punched back in.  If any work was performed during those few minutes before or after the shift ended, or for those few minutes before a lunch or dinner period ended, it was *de minimis* at most and simply not compensable.  Finally, at all relevant times herein, Security Credit maintained a policy that any overtime work must be approved before it is performed.  No collector ever asked to perform overtime work, Security Credit never gave a

collector approval or permission to perform overtime work, and Security Credit had no actual or constructive knowledge that any collector ever performed overtime work.

It must be noted that Plaintiff claims that Defendants owe overtime compensation to every collector employed by Security Credit from 2005 through the present who was paid for seventy-six hours of work or more in a single pay period. However, in the same breath, Plaintiff alleges that these same collectors only "worked" an additional one hundred minutes per pay period for which they were not paid. Simply put, even if all of Plaintiff's allegations and computations were accepted as true and correct, the vast majority of individuals named in Amended Exhibit A to Plaintiff's Complaint are due no overtime compensation whatsoever.

Wherefore, Plaintiff's Complaint and Amended Exhibit A should be dismissed in their entirety.

Dated:   Buffalo, New York
         June 30, 2010

**DAMON MOREY LLP**

/s/ Molly L. Mallia
Molly L. Mallia, Esq.
James N. Schmit, Esq.
*Attorneys for Defendants*
*Security Credit Systems, Inc.*
*Angelo J. Travale, Jr.*
200 Delaware Avenue
Buffalo, New York   14202
Telephone:  (716) 858-3784
E-Mail:   mmallia@damonmorey.com

TO:   US DEPARTMENT OF LABOR
      Darren Cohen
      US Department of Labor
      Office of the Solicitor
      201 Varick St., Room 983
      New York, New York 10014
      Telephone: (212) 337-2582
      Email: cohen.darren@dol.gov
      #1458195

15