UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**ELAINE L. CHAO,** Secretary of labor,
United States Department of Labor,

                Plaintiff,

vs.
                                      Civil Action No 08-cv-00267

**SECURITY CREDIT SYSTEMS, INC.,** and
**ANGELO J. TRAVLE, JR.,** Individually,

                Defendants.

---

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

                                            **DAMON MOREY, LLP**
                                            *Attorneys for Defendants*
                                            SECURITY CREDIT SYSTEMS, INC.
                                            ANGELO J. TRAVALE, JR.
                                            The Avant Building - Suite 1200
                                            200 Delaware Avenue
                                            Buffalo, New York 14202

Molly L. Mallia, Esq.
James N. Schmit, Esq.
Of Counsel

## **PRELIMINARY STATEMENT**

Defendants Security Credit Systems, Inc. ("Security Credit") and Angelo J. Travale, Jr. ("Travale") (collectively referred to as "Defendants") submit this Memorandum of Law in support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]

Defendant Security Credit is a collections agency located in Buffalo, New York. (Schmit Aff. ¶13; Exh. E at 13)[2] Security Credit undertakes collections of overdue accounts on behalf of various businesses, including retail corporations, financial institutions, medical facilities, community colleges and universities. (Schmit Aff. ¶13; Exh. E at 10-13) Security Credit employs collectors whose job is to contact debtors and attempt to negotiate repayment of debts on behalf of Security Credit's clients. (Schmit Aff. ¶14; Exh. F at 39)

Collectors work regularly scheduled shifts of either 8:00 a.m. to 4:30 p.m. or 10:00 a.m. to 7:00 p.m., depending upon the day of the week. (Schmit Aff. ¶14; Exh. F at 14-16) Collectors' weekly schedules and job duties never require them to work more than forty hours in any given week (Schmit Aff. ¶14; Exh. F at 79) Security Credit has a strict policy that collectors must receive approval before performing work outside of their scheduled hours. (Schmit Aff. ¶14; Exh. F at 90; Schmit Aff. ¶15; Exh. G, Robson 3, 6) At all relevant times herein, a collector has never been asked to perform overtime work, and Security Credit has never requested that a collector perform overtime work. (Schmit Aff. ¶14; Exh. F at 90; Schmit Aff. ¶13; Exh. E at 160)

Collectors' job duties consist of telephoning debtors, counseling them regarding their debt, and attempting to work out a repayment plan. (Schmit Aff. ¶14; Exh. F at 39) Collectors perform all of their job duties on Security Credit's telephone and computer system. (Schmit Aff.

---

[1] For a complete recitation of the relevant facts in this matter please see Defendants' Statement of Undisputed Material Facts filed with this Motion for Summary Judgment on June 30, 2010.
[2] Citations in the form "Schmit Aff." refer to the Affidavit of James N. Schmit, Esq., with Exhibits, sworn to on June 30, 2010.

2

¶14; Exh. F at 24, 39 61. 100-101) Significantly, collectors have no access to Security Credit's computer and telephone system before or after their regularly scheduled shifts. (Schmit Aff. ¶14; Exh. F at 42, 110-111; Schmit Aff. ¶13; Exh. E at 104-105) Pursuant to regulations promulgated under the federal Fair Debt Collection Act, collectors cannot perform their primary job function, calling debtors, before 8:00 a.m. or after 7:00 p.m. (Schmit Aff. ¶14; Exh. F at 41; Schmit Aff. ¶13; Exh. E at 109-110)

All collectors, with the exception of recently hired collectors who are still in training, use a hand reader style of time clock to record their time.[3] (Schmit Aff. ¶14; Exh. F at 46) Collectors "punch in" when they arrive in the morning and "punch out" at the close of their shift. Collectors also punch in and out for their break and meal periods. (Schmit Aff. ¶14; Exh. F at 50; Schmit Aff. ¶15; Exh. F at Robson 3, 6) When working from 8:00 a.m. to 4:30 p.m., collectors receive two paid fifteen minute breaks and one unpaid thirty minute meal period. (Schmit Aff. ¶14; Exh. F at 77-78) When working from 10:00 a.m. to 4:30 p.m., collectors receive two paid fifteen minute breaks, one thirty minute unpaid lunch break and one thirty minute unpaid dinner break. *Id*.

The time clock generates an electronic report of the time recorded by collectors. (Schmit Aff. ¶16; Exh. H at 93) These reports are referred to as Archived Time Reports. (Schmit Aff. ¶17; Exh. I at 7; Schmit Aff. ¶15; Exh. G at Robson 1)

Prior to the commencement of the instant action, Department of Labor Investigator Martin Murray conducted an investigation of Security Credit's pay practices with respect to

---

[3] Collectors in training use sign-in sheets, rather than the time clock, to record their time. (Schmit Aff. ¶14; Exh. F at 47-48, 57) In addition, Security Credit has hourly employees in its clerical, sales and marketing department who also manually record time. (Schmit Aff. ¶13; Exh. E at 77-78; Schmit Aff. ¶14; Exh. F at 47-48) However, it is clear from the Department of Labor Investigator Martin Murray's testimony that Plaintiff's investigation, complaint and back wage calculations involve only collectors who use the time clock to record time. (Schmit Aff. ¶17; Exh. I at 6-7, 13, 19; Schmit Aff. ¶18; Exh. J ay Murray 1) Thus, Defendants' instant motion focuses only on collectors who use the time clock to record time.

3

collectors who use the time clock.  (Schmit Aff. ¶17; Exh. I at 6, 11-13, 19)  Mr. Murray examined the Archived Time Reports of a sample of collectors for a single two week pay period in March 2007.  (Schmit Aff. ¶17; Exh. I at 18-19)  Mr. Murray alleged that over this single pay period, a fraction of collectors had time recorded on the Archived Time Reports which totaled more than eight hours in a single day.  (Schmit Aff. ¶17; Exh. I at 26-29; Schmit Aff. ¶18; Exh. J at Murray 1; Schmit Aff. ¶15, Exh. H at Robson 5)  Indeed, the time recorded in excess of eight hours consisted only of instances where an employee punched in a few minutes prior to the scheduled start time or punched out a few minutes after the scheduled end time, or instances where an employee happened to punch in ten minutes before the end of his or her lunch or dinner period regardless of the fact that the employee actually took a thirty minute meal period and no work was performed during that time.  *Id*.  (*See also* Schmit ¶19: Exh. K at 19; Schmit ¶20: Exh. L at 23; Schmit ¶21: Exh. M at 7-8)

      Based upon these early and late punches on the Archived Time Reports of some collectors over a single pay period, Mr. Murray purports that, since 2005, an average of one hundred minutes per pay period per collector was recorded on the Archived Time Reports but was not paid.  (Schmit ¶17: Exh. I at 34-37)  Mr. Murray then somehow concluded that every single collector who worked for Security Credit from 2005 to the present and who was paid for seventy-six hours of work or more during a two week pay period, was due one hundred minutes of overtime pay.  (Schmit ¶17: Exh. I at 39-40)  Mr. Murray's calculation is nonsensical and contrary to the requirements of the Fair Labor Standards Act.  Even if collectors had worked these additional one hundred minutes per pay period, which they did not, those who worked seventy-six, seventy-seven or even seventy-eight hours in a pay period would not be owed any overtime compensation.  (Schmit ¶17: Exh. I at 44-49)

      Based solely upon Mr. Murray's investigation of a single pay period and his erroneous calculations of overtime, Plaintiff commenced an action in United States District Court, Western

4

District of New York on April 2, 2008.  (Schmit Aff. ¶3; Exh. A)  In the Complaint, Plaintiff alleges that from April 2005 through the present, Defendants violated Sections 7 and 15(a)(2) by failing to compensate employees for overtime worked pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 *et seq* ("FLSA").  *Id*.  Plaintiff further alleges that Defendants violated Sections 11(c) and 14(a)(5) of the FLSA by failing to make, keep and preserve adequate and accurate records of their employees and their wages, hours, and terms and conditions of employment.  *Id*.  Exhibit A to Plaintiff's Complaint purported to name approximately 116 former and current Security Credit employees who allegedly have not received adequate overtime compensation under the FLSA.  *Id.*

On or about April 7, 2007, Plaintiff filed a Complaint with an Amended Exhibit A which purported to add an additional eighty-three current and former Security Credit employees who allegedly did not receive adequate compensation under the FLSA.  (Schmit Aff. ¶10; Exh. C)  All of the employees named in Exhibit A and Amended Exhibit A, with the exception of a few, are or were collectors for Security Credit who used the time clock to record their time.  *Id*.

On or about June 16, 2008, Defendants filed and served their Answer to Plaintiff's Complaint.  Schmit Aff. ¶4; Exh. B.  Defendants denied all material allegations contained in the Complaint and affirmatively stated that: (1) Security Credit has paid all employees in Exhibit A all remuneration due and owing to them for actual hours worked, including overtime hours; (2) under federal law, Security Credit was not obligated to compensate employees named in Exhibit A who voluntarily came in before their regular starting time or remained after their regular ending time since they did not engage in work during those time periods; (3) any work that was performed by employees listed in Exhibit A either before their regular starting time or after their regular ending time was so negligible that it was *de minimis* and, therefore, not compensable under the FLSA; and (4) Security Credit lacked actual or constructive knowledge that any employees named in Exhibit A were working overtime, and therefore, are not liable for overtime

5

compensation under the FLSA. *Id.* On April 26, 2010, Defendants filed an Amended Answer to Plaintiff's Complaint with Amended Exhibit A, denying all material allegations and asserting the same affirmative defenses. (Schmit Aff. ¶11; Exh. D)

As explained in detail below, no overtime pay or additional compensation is owed to any current or former Security Credit employees listed in Amended Exhibit A. Security Credit has, at all times, kept accurate time records for all employees and has paid all employees, in full, for all hours worked. Therefore, this Court should dismiss Plaintiff's Complaint and Amended Exhibit A in their entirety.

## **ARGUMENT**

### **SUMMARY JUDGMENT STANDARD**

A motion for summary judgment shall be granted if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). Under Rule 56, the moving party has the burden of showing the absence of genuine issues as to material facts. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 156 (1970). However, it is clear that "[t]he existence of a factual dispute between the parties will not prevent the entry of summary judgment unless it is a genuine issue of material fact." *Sugg v. ITT Hartford*, 2002 WL 1012969, at *2 (W.D.N.Y. 2002) (*quoting Anderson*, 477 U.S. at 247-48). "An issue of fact is genuine only where the evidence taken as a whole would allow a rational factfinder to return thereupon a verdict in favor of the non-moving party; whether such issue is material is governed by applicable law." *Id.*; *accord Anderson*, 477 U.S. at 248.

In order to defeat a motion for summary judgment, the party opposing the motion "must do more than demonstrate the existence of some metaphysical doubt as to the material fact."

*Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991, *cert. denied,* 502 U.S. 849 (1991)).  Indeed, the Plaintiff must produce "specific facts showing that there is a genuine issue for trial." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 146 (2d Cir. 1993) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  The non-moving party may only defeat a summary judgment motion by demonstrating that a "reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

As set forth more fully below, no reasonable jury could return a verdict for the Plaintiff and, accordingly, the Complaint must be dismissed in its entirety.

## POINT I

### DEFENDANTS HAVE NOT VIOLATED THE RECORDKEEPING PROVISIONS OF THE FAIR LABOR STANDARDS ACT

The Fair Labor Standards Act ("FLSA") requires employers to make, keep and preserve records of employee wages and hours worked.  29 USC §211(c).  Federal regulations, promulgated pursuant to the FLSA, specifically provide that when an employer elects to make and preserve time records using a time clock, minor discrepancies between time clock records and actual hours worked cannot be avoided, and are not considered violations of the FLSA:

> Differences between clock records and actual hours worked.  Time clocks are not required.  In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after closing time, do not have to be paid for such periods provided, of course, that they do not engage in work.  Their early or late punching may be disregarded.  Minor differences between the clock records and actual hours worked cannot ordinarily be avoided, but major discrepancies should be discouraged since they raise doubt as to the accuracy of the records of the hours actually worked.

29 C.F.R. §785.48(a).

Security Credit uses a hand reader style time clock to record time for all collectors. (Schmit Exh. ¶14; Exh. F at 46)  The time clock generates electronic records of the time recorded called Archived Time Reports.  (Schmit Exh. ¶16; Exh. H at 93; Schmit Exh. ¶17; Exh. I at 7; (Schmit Exh. ¶15; Exh. G at Robson 5)  Since 2003, and at all times relevant herein, all

collectors (with the exception of those in training who are not subjects of the instant action) have been required to use the time clock to record their time. (Schmit Exh. ¶14; Exh. F at 50)

Security Credit has in place a number of policies to ensure that collectors' time is recorded as accurately as possible. Collectors are required to punch in at the start of their shift and are required to punch out when their shift ends. (Schmit Exh. ¶14; Exh. F at 48-50) They are also required to punch in and out for their morning and afternoon breaks, and their lunch and/or dinner periods. *Id.*

Prior to starting work as a collector at Security Credit, prospective employees are given memoranda outlining their regularly scheduled hours and stating that it is their responsibility to accurately record their time using the time clock. (Schmit Exh. ¶15; Exh. G at Robson 3, 6) Collectors are also told that if they experience any problems with the time clock, or if they deviate from their normal work hours, they are to notify a supervisor. *Id.* While there may have been issues regarding the application of a sick day or vacation day or instances where the hand reader temporarily malfunctioned (all of which were remedied by Security Credit), no employee has ever contacted Security Credit and questioned the accuracy of their Archived Time Reports. (Schmit Aff. ¶14; Exh. F at 93-96, 98-99)

In some instances, the Archived Time Reports show early or late punches, meaning that a collector will punch in immediately upon arriving at work, before their shift actually begins, or an employee will punch out a few minutes after they stop working, because they are waiting in line to use the time clock. (Schmit Aff. ¶15; Exh. G at Robson 5; Schmit Aff. ¶19; Exh. K at 18-19; Schmit Aff. ¶20; Exh. L at 23-24; Schmit Aff. ¶21; Exh. M at 7-9) In addition, there may have been instances, represented on the Archived Time Reports, where an employee will happen to punch in early from a thirty minute unpaid lunch or dinner period, regardless of the fact that they have not yet returned to work. These are discrepancies which cannot be avoided and do not violate the FLSA. In fact, Section 785.18 of Plaintiff's own regulations specifically

8

acknowledges that **"early or late clock punching may be disregarded…[and] [m]inor differences between the clock records and actually hours worked cannot be avoided."** 29 C.F.R. §785.48 (emphasis added).

At all times relevant herein, Security Credit has used a time clock to make and keep records of collectors' recorded time, and has promulgated policies instructing all collectors to accurately record their time. The early or late punches in the Archived Time Reports simply cannot be avoided and are considered acceptable by the Department of Labor. Aside from these early or late punches, which are specifically permitted, Plaintiff has shown no discrepancy or inaccuracy in Defendants' records. Thus, Plaintiff's claims that Defendants have failed to abide by FLSA recordkeeping requirements must be dismissed in their entirety.

## POINT II

### DEFENDANTS HAVE NOT VIOLATED THE OVERTIME PROVISIONS OF THE FAIR LABOR STANDARDS ACT

Plaintiff bases its entire overtime claim on a single pay period where the Archived Time Reports for a fraction of collectors may have recorded a few minutes of time in excess of eight hours per day. (Schmit Aff. ¶17; Exh. I at 27-27, 31, 34-38; Schmit Aff. ¶15; Exh. G at Robson 5) Following the deposition of Mr. Murray and after examining the Archived Time Reports, it is clear that the time recorded in excess of eight hours, which Plaintiff now claims is "overtime," consists simply of: (1) a few minutes of time which may have been recorded immediately prior to a collector's start time; (2) a few minutes of time which may have been recorded immediately after a collector's scheduled end time; or (3) time which may have been recorded when a collector punched in ten minutes prior to the end of an unpaid lunch or dinner break, regardless of whether the employee actually returned to work. *Id*. In sum, all of the alleged "overtime work" occurred either a few minutes before employees began their day, a few minutes after the employees ended their day, or at the very end of a lunch or dinner period.

Plaintiff's claim for overtime must fail because: (1) no work could have been performed, or was actually performed, prior to collectors' scheduled start times, after collectors' scheduled end time, or during their lunch and dinner periods; (2) if any work was performed during these times it was *de minimis* at best and not compensable under the FLSA; and (3) Defendants simply cannot be held liable for alleged overtime work of which they had no knowledge, and certainly did not approve of or require.

<em>Time recorded on the archived time reports before or after<br>collectors' scheduled shifts or during unpaid<br>meal periods was not time actually worked.</em>

Plaintiff's own regulation specifically provides that **"in those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work…[t]heir early or late punching may be disregarded."** 28 CFR §785.48 (emphasis added). This provision is clearly controlling here where collectors did not perform any actual work outside of their regularly scheduled, and paid for, hours of work. Since no additional work was performed, collectors are simply not entitled to compensation for the few minutes of time which may have been recorded prior to their shift, following their shift, or at the very end of their meal periods.

As discussed above and in great detail in Defendants' Undisputed Statement of Material Facts, collectors are simply unable to perform their job duties outside of their scheduled shift. Collectors sole job is to telephone debtors, counsel them regarding their debt, and negotiate a payment plan on behalf of Security Credit's clients. (Schmit Aff. ¶14; Exh. F at 39)  All of the information which they need, including debtor name and contact information, the amount of the debt, and records regarding prior conversations with and promises made by debtors, is contained in Security Credit's computer system. (Schmit Aff. ¶14; Exh. F at 24)  The computer system also

contains skip tracing software and allows collectors to request that certain letters be sent to debtors and clients. (Schmit Aff. ¶14; Exh. F at 61, 100-101)

In short, collectors must have access to both Security Credit's phone system and computer system in order to perform their job duties. Significantly, collectors have no access to Security Credit's computer or telephone system before or after their scheduled shift. (Schmit Aff. ¶14; Exh. F at 42, 110-111; Schmit Aff. ¶13; Exh. E at 104-105) At either 4:30 p.m. or 7:00 p.m., depending upon the day of the week, Security Credit shuts down collectors' computers and places their telephones in night mode. (Schmit Aff. ¶14; Exh. F at 42-43) When the telephones are in night mode, all incoming calls are transferred to an automated message stating that the office is closed. *Id.* Collectors do not have access to Security Credit's computer system or telephones until their shift begins the next day. (Schmit Aff. ¶14; Exh. F at 42-44, 110-111) Also importantly, the federal Fair Debt Collection Act prohibits collectors from performing their primary duty, contacting debtors, prior to 8:00 a.m. and after 7 p.m. (Schmit Aff. ¶14; Exh. F at 41 Schmit Aff. ¶13; Exh. E at 42, 109-110)

Since all collectors end work at the same time every day, collectors often have to wait in a long line to punch out using the time clock. (Schmit Aff. ¶19; Exh. K at 18-19; Schmit Aff. ¶20; Exh. L at 23-24; Schmit Aff. ¶21; Exh. M at 7-9) Former employees who were deposed in this matter testified that they stopped working at 4:30 p.m. *Id.* Clearly, no work is being performed between 4:30 p.m. when the shift ends and the few minutes it takes for employees to gather their belongings, wait in line, and punch out before exiting the building. *Id.* Similarly, at the beginning of the workday, collectors, like the vast majority of employees, will punch in immediately upon arrival, and use the restroom, put away their belongings, socialize, or consume coffee or breakfast before sitting down to actually begin work. It is highly unlikely that an employee will punch in and within those same few minutes, begin work. These few minutes that collectors spent

immediately before or immediately after their shift getting organized, taking care of personal matters, or waiting to punch out, is simply not compensable work time.

Similarly, work was not performed during collectors' lunch or dinner period. Three former collectors for Security Credit testified that they would always take the entire unpaid thirty minute lunch or dinner period which was provided. (Schmit Aff. ¶19; Exh. K at 19; Schmit Aff. ¶20; Exh. L at 23; Schmit Aff. ¶21; Exh. M at 7-8) From time to time an employee may have punched in ten minutes prior to the end of his or her lunch or dinner period, regardless of the fact that the employee actually took a thirty minute meal period and no work was performed during that time. *Id*. The early punch does not turn an unpaid thirty minute meal period, during which no work was performed, into overtime or time actually worked.

Collectors could not, and did not, perform work outside of their scheduled shifts. If time was recorded prior to the end of a thirty minute lunch or dinner period, it was for the employee's convenience and not because work was actually being performed. In following, there is absolutely no basis to conclude that any additional compensation is due.

*If work was performed before or after collectors' scheduled shift or during unpaid meal periods, it was de minimis and therefore non compensable.*

Defendants maintain that collectors did not perform any work outside of their scheduled shifts, or during their thirty minute unpaid lunch or dinner breaks. However, if any work was performed during those few minutes which may have been recorded before or after a collector's scheduled shift times, it was *de minimis* at best and not compensable. Further, if any worked was performed in those ten minutes that may have been recorded before a lunch or dinner period ended, it was also *de minimis* at best and does not provide a sufficient basis for Plaintiff's claim.

Federal courts have routinely found, as a general rule, that employees cannot recover otherwise compensable time if it is *de minimis*. For example, in *Lindow v. United States*, the Ninth Circuit affirmed a District Court's determination that the seven to eight minutes per day

12

spent by Army Corps of Engineer employees, reading a log book and exchanging information with other employees prior to the start of each shift, was not compensable work time. 738 F.2d 1057 (9th Cir. 1098)  The *Lindow* Court noted that a few minutes of work by an employee, beyond the employee's scheduled working hours, may be disregarded, and it "is only when an employee is required to give up a substantial measure of his [or her] time and effort that compensable working time is involved." *Id*.  In summarizing its holding, the *Lindow* Court stated that when determining whether otherwise compensable time is *de minimis*, it is proper to consider: (1) the practical difficulty of keeping track of the additional time; (2) the aggregate amount of compensable work; and (3) the regularity of the additional work. *Lindow*, 738 F.2d at 1063.

In *Lindow*, the Ninth Circuit also noted that "most courts have found daily periods of ten minutes *de minimis*, even though otherwise compensable." *Lindow*, 738 F.2d at 1062. *See also Reich v. New York City Transit Authority*, 45 F.3d 646 (2d Cir. 1995) (action by Department of Labor for the underpayment of wages dismissed since the Second Circuit concluded that the time police department canine handlers spent caring for police dogs during their commute was *de minimis* and non compensable); *Alvarado v. Costco Wholesale Corporation*, 2008 WL 2477393 (N.D. Cal. 2008) (time that employees spent undergoing Costoco's daily security checks was *de minimis* in nature and did not have to be compensated); *Hodgson v. Katz and Besthoff, #38, Inc.*, 365 F.Supp. 1193 (W.D. Louisiana 1973) (drug store cashiers were not entitled to overtime compensation for preliminary and post-liminary shift activities such as counting cash balance, doing stock work, and arranging displays, where the activities were for the employees' own convenience and the activites were irregular and haphazard).

Plaintiff will purport that during the excess time which may have been recorded before or after an employee's scheduled shift, or at the very end of a thirty minute meal period, employees were performing compensable work.  However, any work that was performed was *de minimis* at best and, according to the case law discussed above, is not compensable.  To begin, collectors

13

simply did not have the time to perform anything other than *de minimis* work during this period. Collectors would punch in, at most, a few minutes before their scheduled work time and would punch out, at most, a few minutes after their scheduled work time. In fact, since 2007, the time clock was not even plugged in and working until approximately five minutes before eight. (Schmit Aff. ¶14; Exh. F at 147) Conversely, at the end of every shift, Ms. Robson patrols to ensure that all employee have logged out of their computers and punched out, and then she disengages the time clock. (Schmit Aff. ¶14; Exh. F at 144) From 4:30 to 4:35 p.m., employees wait in line to punch out, much like the employees in *Costco* would wait for security clearance. In fact, any preliminary "work" performed by collectors in the five minutes prior to the shift beginning is exactly analogous to the seven or eight minutes of preliminary work performed by the employees in *Lindow*, which the Ninth Circuit clearly determined was non-compensable.

Also significantly, collectors did not have the ability to perform anything other than *de minimis* work during this time period. As explained in detail above, collectors could not perform their jobs outside of their regular work hours. Plaintiff will allege that during this time collectors looked at hand written "promise sheets" or listened to their voice mail. These contentions are simply without merit. Collectors were not required to keep or look at promise sheets, they were not required to keep or look at anything hand written for that matter. Further, listening to an occasional voice mail outside of a scheduled shift certainly does not constitute more than *de minimis* work, especially since the Fair Debt Collection Act prohibited collectors from returning those calls until their shift actually began. Like the "work" performed by the drug store cashiers in *Katz*, which the Court determined was non compensable, anything job related done by the collectors during these excess few minutes was irregular, haphazard and for their own convenience. In fact, the *Katz* Court accurately summarized:

> This work contemplated by [the overtime provision of the FLSA] must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working

14

hours, such trifles may be disregarded. Split second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved. *Katz*, 365 F. Supp. at 1197.

Similarly here, collectors simply were not devoting "a substantial measure of time and effort" to work in the few minutes preceding their shift, the few minutes following their shift when they were waiting to punch out, or for a few minutes at the end of their lunch or dinner period. Defendants were not obligated to compensate employees for this *de minimis* time.

<em><u>Security Credit is under no obligation to pay for overtime which it had<br>no actual or constructive knowledge of.</u></em>

An employer must pay overtime when he or she "suffers" or "permits" an employee to work in excess of forty hours in one week. 29 USC §§203(g), 207(a); *Lindow*, 738 F.2d at 1060. Courts have interpreted the words "suffer" or "permit" to mean "with knowledge by the employer." *Id*. Therefore, in order to recover for uncompensated overtime, the plaintiff must prove that defendant had knowledge, either actual or constructive, of overtime work. *Barvinchak v. Indiana Regional Medical Center*, 2007 WL 2903911 (W.D.Pa. 2007).

Here, Plaintiff has not proven, nor can it prove, that Defendants had either actual or constructive knowledge that overtime work was being performed. Therefore, even if such work was being performed, which it was not, no overtime compensation is due.

At all relevant times, Security Credit has maintained a strict policy that any overtime work must be approved before it is performed. (Schmit Aff. ¶15; Exh. G at Robson 6) Further, employees were expressly told that if they need to deviate from their regularly scheduled hours, they are to inform a supervisor. *Id.* Indeed, no collector had ever requested overtime work, nor has any collector ever informed Defendants that they performed work outside of their regularly scheduled hours for which they were not paid. (Schmit Aff. ¶14; Exh. F at 90) Moreover, neither

Defendants nor any members of management has ever requested a collector to work overtime, or authorized such work. *Id.*

Ms. Robson, the office manager for Security Credit who works on the fifth floor and supervises all collectors, testified that collectors are never required to work overtime and that collectors do not work overtime. (Schmit Aff. ¶14; Exh. F at 90) Ms. Robson also stated that during the eighteen years she has supervised Security Credit collectors, no collector has ever requested overtime or informed Ms. Robson that they in fact worked overtime. *Id.* Mr. Travale also testified that collectors are not required to work, do not work, and would not be given approval to work overtime. (Schmit Aff. ¶13; Exh. E at 160)

As explained extensively above, no overtime is owed because collectors do not perform work outside of their scheduled shifts. Any activites that collectors do engage in immediately before or immediately after their shift, or before they return from a lunch or dinner period, are *de minimis* and not compensable under federal law. However, even if overtime work was being performed by collectors, Security Credit had no actual or constructive knowledge of this work. In fact, based upon all of their policies, the behavior of their employees, and the employees' inability to access essential equipment outside of their regular work hours, Security Credit had every reason to believe that no work was being performed outside of the scheduled shifts. Under the FLSA, an employer such as Security Credit cannot be found liable for "overtime" which it did not suffer or permit employees to work.

## POINT III

### PLAINTIFF'S OWN CALCULATIONS DEMONSTARTE THAT NO OVERTIME COMPENSATION IS OWED

Pursuant to the FLSA, an employer is required to pay overtime only in instances where an employee works in excess of forty hours in any given week. 29 USC §§203(g), 207(a). Even if all of Plaintiff's allegations regarding collectors' work time were accepted as true, Plaintiff's

own calculations indicate that for the vast majority of former and current employees listed in Amended Exhibit A to the Complaint, no overtime is due.

Mr. Murray's calculations of unpaid overtime were based upon the Archived Time Reports of a fraction of collectors who worked during a single pay period in March of 2007. (Schmit ¶17; Exh. I at 14)  Based upon this small and unreliable sample--Mr. Murray admits that he did not even examine the records of every collector who worked that pay period—Mr. Murray somehow concluded that an average of ten minutes per day, or one hundred minutes per two week pay period was recorded on collectors' Archived Time Records but was not paid to collectors.  (Schmit ¶17; Exh. I at 19-20, 34-37)

Miraculously, Mr. Murray then jumped to the conclusion that every former or current collector who worked for Security Credit since 2005, and was paid for seventy-six hours of work during a pay period, would be entitled to one hundred minutes of overtime compensation for that pay period. (Schmit ¶17; Exh. I at 39-40)  Plaintiff admits that the FLSA only requires the payment of overtime in work weeks where an employee works over forty hours per week. (Schmit ¶17; Exh. I at 39-40)  His calculations then, are completely contrary to the requirements of the FLSA.  (Schmit ¶17; Exh. I at 39-40)  Frankly, Mr. Murray's math simply does not add up.  Since Mr. Murray concluded that employees averaged one hundred minutes of uncompensated work per pay period, no employee who worked and was paid for seventy-six, seventy-seven or even seventy-eight hours of work in the pay period would be entitled to receive overtime.  Specifically, even if you added the additional fifty minutes of allegedly uncompensated work per week to the time that was undisputedly worked and paid for, these employees still would not exceed forty hours of work per week.  Yet, Plaintiff has brought a federal court action under the FLSA in which it purports to assert that employees who worked only seventy-six, seventy-seventy, or seventy-eight hours in a pay period are entitled to overtime,

17

even though by Plaintiff's own calculations, those employee only "worked" an extra one hundred minutes that pay period for which they were not compensated.

Based upon the requirements of the FLSA, and Plaintiff's own investigation which allegedly revealed that one hundred minutes per collector per pay period was worked but not paid, a significant number of employees named in Amended Exhibit A to the Complaint are clearly not entitled to any overtime compensation whatsoever.  Since Plaintiff's own investigation and calculations cannot support its claims, Plaintiff's Complaint should be dismissed in its entirety.

## **CONCLUSION**

For all of the reasons set forth herein, Defendants request that this Court dismiss Plaintiff's Complaint and its Amended Exhibit A in their entirety.

Dated:   Buffalo, New York
         June 30, 2010

**DAMON MOREY LLP**

s/ Molly L. Mallia
Molly L. Mallia, Esq.
James N. Schmit, Esq.
*Attorneys for Defendant –*
SECURITY CREDIT SYSTEMS, INC.
ANGELO J. TRAVALE, JR.
200 Delaware Avenue
Buffalo, New York   14202
Telephone:  (716) 858-3784
E-Mail:  mmallia@damonmorey.com

TO: **US DEPARTMENT OF LABOR**
Darren Cohen
US Department of Labor
Office of the Solicitor
201 Varick St., Room 983
New York, New York 10014
Telephone: (212) 337-2582
Email: cohen.darren@dol.gov

#1459923