UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HILDA L. SOLIS,

                                        Plaintiff,

                    -vs-                                          08-CV-267-JTC

SECURITY CREDIT SYSTEMS, INC., et al.,

                                        Defendant.

_____

By order of Chief United States District Judge William M. Skretny dated November 5, 2010 (Item 46), this matter has been reassigned to the undersigned for all further proceedings.

The complaint in this action was filed on April 2, 2008, by plaintiff Elaine Chao[1] as Secretary of the United States Department of Labor ("DOL"), against Security Credit Systems, Inc. ("Security Credit") and its owner Angelo J. Travale, Jr., seeking injunctive relief and damages on behalf of Security Credit employees pursuant to various provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Plaintiff claims that, during the three-year period preceding the filing of the complaint, defendants "willfully and repeatedly" violated the overtime compensation and record-keeping requirements of the FLSA and its implementing regulations (Item 1, ¶¶ VII-IX).

Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that, after discovery, plaintiff has come forward

---

[1] On February 24, 2009, Hilda L. Solis replaced Elaine Chao as Secretary of Labor, and is therefore automatically substituted as the plaintiff herein pursuant to Rule 25(d) of Federal Rules of Civil Procedure.

with no credible evidence to support the claims alleged.  For the reasons that follow, defendants' motion is denied.

## BACKGROUND

The facts incorporated in this background section are derived from the parties' statements submitted in accordance with Rule 56.1 of the Local Rules of Civil Procedure for the Western District of New York (Item 38-5; Item 43-2), and accompanying affidavits and exhibits.

Security Credit is a collection agency located in Buffalo, New York, engaged in the business of undertaking collections of overdue accounts on behalf of various clients, which include retail corporations, financial institutions, medical facilities, community colleges, and universities.  Security Credit employs "collectors," whose job duties include contacting debtors to try to negotiate repayment of debts owed to Security Credit's clients.  Collectors generally are assigned a weekly schedule that runs from 8:00 a.m. to 4:30 p.m. on most days, and from 10:00 a.m. to 7:00 p.m. one or two days per week, for a total of 40 hours each week.  They are required to perform all of their job duties on Security Credit's telephone and computer system (Item 38-5, ¶¶ 1-9, 23).

Collectors use a "hand scan" time clock to record the times they begin and end their work, as well as their break time and meal time.  When working from 8:00 a.m. to 4:30 p.m., collectors receive two paid fifteen-minute breaks and one unpaid thirty-minute meal period.  When working the 10:00 a.m. to 7:00 p.m. shift, collectors receive two paid fifteen-minute breaks, one thirty-minute unpaid lunch break, and one thirty-minute unpaid dinner

break.   The time clock generates electronic reports of the time recorded by collectors,

referred to as "Archived Time Reports" (*id.* at ¶¶ 10-12).

According to Security Credit's written policies:

ACCURATELY RECORDING TIME WORKED IS THE RESPONSIBILITY
OF EVERY EMPLOYEE.

TIME WORKED IS ALL THE TIME ACTUALLY SPENT ON THE JOB
PERFORMING ASSIGNED DUTIES.

If an employee punches in [e]arly or punches out late, without prior approval
of a supervisor, the time recorded is defaulted to an 8-hour  workday.
. . .

Overtime work must always be approved before it [is] performed.

Item 44-4, Exs. A ("Weekly Work Hours" policy), C ("Timekeeping and Use of Time Clock"

policy).   During the three-year period relevant to the claims in this action, no collector has

requested approval for overtime, nor has Security Credit requested that any collector work

overtime (*see* Item 38-3, Ex. F, at 90; Ex. E, at 160).

In March 2007, DOL Investigator Martin Murray initiated an investigation in response

to a complaint regarding Security Credit's compliance with the FLSA's requirement that

employers pay employees one and one-half times their regular rate of pay for hours

worked in excess of forty hours per week.   Mr. Murray interviewed several employees,

reviewed company documents, and examined the Archived Time Reports and payroll

records of a sample of collectors for a single two-week pay period in March 2007.   Based

on the information he received, Mr. Murray concluded that Security Credit collectors

frequently worked more than forty hours in a week, but were not compensated at one and

one-half times their regular rate of pay for that time, as required by the statute (Item 38-5,

¶¶ 33-36).   Mr. Murray calculated that, on average, each collector who was paid for

seventy-six hours of work or more during a two-week pay period was due one hundred minutes of overtime pay, which totaled in the aggregate over $50,000 for the period from April 2005 through October 2009 (*id.* at ¶¶ 43-44; *see also* Item 44-14, ¶ 11).

Following review of Mr. Murray's investigation, the DOL commenced this action alleging that, since April 2005, Security Credit has failed to compensate employees for overtime worked, in violation of FLSA Sections 7 and 15(a)(2), and has failed to make, keep and preserve adequate and accurate records of employees' wages, hours, and terms and conditions of employment, in violation of FLSA Sections 11(c) and 14(a)(5) (*see generally* Item 1). Attached to the complaint as Exhibit A is a list of 116 former and current Security Credit employees who the DOL claims are entitled to unpaid overtime compensation. By order entered April 2, 2010, plaintiff was granted leave to amend Exhibit A to include on the list an additional 83 current and former employees revealed during discovery who are alleged to be entitled to overtime compensation as well (*see* Item 36).

Defendants have now moved for summary judgment dismissing the complaint in its entirety. Defendants contend that the "overtime" hours reported by Mr. Murray as a result of his limited comparison of Archived Time Reports for a small number of employees with payroll records for a single pay period actually reflects only minor discrepancies between time clock records and actual hours worked, not compensable "overtime" under the FLSA and DOL regulations. Defendants also contend that plaintiff's record-keeping claim must fail because, as recognized by the regulations, these minor reporting discrepancies are unavoidable when an employer uses a time clock to record employees' work hours, and therefore cannot be considered to be violations of the FLSA.

## **DISCUSSION**

I.      **Summary Judgment Standard**

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Hamilton Bank, N.A. v. Kookmin Bank*, 245 F.3d 82, 89 (2d Cir. 2001).

In reaching a summary judgment determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 574 (2d Cir. 2005). The moving party bears the initial burden of establishing that there are no genuine issues of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). That burden may be satisfied by pointing out the absence of evidence to support the non-movant's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once this initial showing is made, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). Mere conclusory allegations are insufficient and "[t]here must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts . . .'" to defeat a motion for summary judgment. *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting

*Anderson*, 477 U.S. at 252, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), *cert. denied*, 500 U.S. 928 (1991).

The trial court's function at the summary judgment stage "is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Services, Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see also Keystone Manufacturing Co., Inc. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 549 (W.D.N.Y. 2005).  "In examining the record it must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute." *Gallo*, 22 F.2d at 1224 (citing *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).  In this case, the substantive law is the FLSA.

## II.     Fair Labor Standards Act

### A.     Overtime

The DOL's claim that Security Credit failed to pay overtime compensation invokes Section 207(a)(1) of the FLSA, which provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  The FLSA's overtime provisions "were designed to remedy the 'evil of overwork' by ensuring workers were adequately compensated for long hours, as well as by applying financial pressure on employers to reduce overtime." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008) (quoting *Overnight Motor Transp. Co. v.*

*Missel*, 316 U.S. 572, 577-78 (1942)).   To accomplish these goals, "the Supreme Court consistently has interpreted the Act liberally and afforded its protections exceptionally broad coverage." *Id.* (citing cases).

Although the courts have not precisely defined the elements of a claim for failure to pay overtime compensation under 29 U.S.C. § 207(a), the Second Circuit has held that the plaintiff (in this case, the Secretary of Labor bringing suit on behalf of affected Security Credit employees) has the initial burden to "produce sufficient evidence to establish that the employees have in fact performed work for which they were improperly compensated and produce sufficient evidence to show the amount and extent of that work 'as a matter of just and reasonable inference.'" *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 67 (2d Cir. 1997) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).   As explained by the Second Circuit, in meeting this initial burden under *Mt. Clemens*, "the Secretary need not present testimony from each underpaid employee; rather, it is well-established that the Secretary may present the testimony of a representative sample of employees as part of [her] proof of the *prima facie* case under the FLSA." *Southern New England*, 121 F.3d at 67.   Upon making this showing, described in the case law as "minimal," *see, e.g., Secretary of Labor v. DeSisto*, 929 F.2d 789, 793 (1st Cir. 1991), the burden shifts to the employer:

> to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.   If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate.

*Mt. Clemens*,  328 U.S. at 687-88.

In this regard, while the term "employ" is defined in the FLSA as "to suffer or permit to work," 29 U.S.C. § 203(g), the statute does not contain a definition of "work." However:

> The broad meaning that has emerged from Supreme Court cases describes work as exertion or loss of an employee's time that is (1) controlled or required by an employer, (2) pursued necessarily and primarily for the employer's benefit, and (3) if performed outside the scheduled work time, an integral and indispensable part of the employee's principal activities.

*Gotham Registry*, 514 F.3d at 285 (citing *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)); *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944); *Steiner v. Mitchell*, 350 U.S. 247, 252-53 (1956)); *see also Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 521 (2d Cir.) (question whether employee is entitled to overtime pay is a mixed question of law and fact; court determines as a matter of law whether employee's activities could potentially constitute "work," and jury decides as a question of fact (1) how much of employee's time spent with employer fell within court's definition of "work" and would be compensable, and (2) how much of that time was spent with the employer's actual or constructive knowledge), *cert. denied*, 525 U.S. 1055 (1998).

Upon review of the entire record presented thus far, the court finds the evidence proffered by the Secretary sufficient to make a *prima facie* showing that Security Credit employees have performed activities outside their scheduled work time, and for which they were not compensated, which could potentially be considered an integral and indispensable part of the employees' principal activities "as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687. For example, several employees testified at their depositions that they performed work-related activities before their shifts began or during the time allotted for breaks and meals, including reading through client files;

reviewing "promise sheets" and  "hot sheets;" checking and responding to voice mail and other messages; reviewing faxes, letters, and other documents related to accounts; planning their calls to clients; and returning calls or initiating client contact when phones were available.  *See, e.g.*, Item 43-3, Ex. G, at 11-12, 16-17 (Garrett King); Ex. H, at 11-12 (Michael Frank); Ex. I, at 16-18, 22 (Linda Fazio).

Defendants contend that all of this alleged "overtime work" occurred either a few minutes before employees began their day, a few minutes after the employees ended their day, or at the very end of a break or meal period, and "is so negligible as to be *de minimis* and therefore not compensable under the FLSA."  *Reich v. New York City Transit Authority*, 45 F.3d 646, 652 (2d Cir. 1995).  Under the *de minimis* doctrine, first articulated in *Anderson v. Mt. Clemens Pottery*, employers may disregard otherwise compensable work for purposes of the FLSA's overtime requirements "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours . . . . It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved."  *Mt. Clemens*, 328 U.S. at 692.  The Second Circuit considers three factors in determining whether otherwise compensable time should be considered *de minimis*: (1) the practical administrative difficulty of recording additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis.  *Singh v. City of New York*, 524 F.3d 361, 370-71 (2d Cir. 2008); *see also New York City Transit Authority*, 45 F.3d at 652 (citing *Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984)).

Defendants rely on the holding in *Lindow*, in which the Ninth Circuit applied the *de minimis* doctrine to a claim for overtime compensation under the FLSA in a case of first impression.  The circuit court affirmed the district court's determination after trial that seven to eight minutes spent each day by Army Corps of Engineer employees, reading a log book and exchanging information with other employees prior to the start of their work shift, was *de minimis* and therefore not compensable.  Noting that "most courts have found daily periods of 10 minutes *de minimis*, even though otherwise compensable . . . ," *Lindow*, 738 F.2d at 1062 (citing cases), the *Lindow* court focused on "the practical administrative difficulty of recording small amounts of time for payroll purposes" *Id.* (citing 29 C.F.R. § 785.47).[2]  Based upon the proof at trial, which showed a wide variance in the amount of pre-shift time spent on compensable activities (as opposed to social activities like engaging in conversation and drinking coffee), and notwithstanding the substantial size of the aggregate claim, the court found that the time for which the employees sought overtime compensation was *de minimis* "because of the administrative difficulty of recording the time and the irregularity of the additional pre-shift work."  *Id.* at 1064.

---

[2]This regulation states:

> In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded.  The courts have held that such trifles are *de minimis*.  This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities.  An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.

29 C.F.R. § 785.47 (citations omitted).

In contrast, in this case it is not disputed that Security Credit's "hand scan" procedure provides a relatively precise method for generating Archived Time Reports, at least arguably minimizing the practical administrative difficulty of recording the time collectors spend at work before and after their shifts and during allotted break times. Indeed, *Lindow* itself holds that employers "must compensate employees for even small amounts of daily time unless that time is so minuscule that it cannot, as an administrative matter, be recorded for payroll purposes." *Lindow*, 738 F.2d at 1062-63. In addition, the Secretary relies on the deposition testimony of former and current employees, as well as the Archived Time Reports themselves, as evidence from which a reasonable inference can be drawn that the activities at issue are primarily pursued for the employer's benefit, occur on a fairly regular basis, and are engaged in by a significant number of collectors giving rise to an aggregate claim for unpaid overtime compensation of substantial size.

Based upon the record presented, and considering the admonition to afford the FLSA's overtime requirements "exceptionally broad coverage" in recognition of the statute's "remedial and humanitarian goals," *Gotham Registry*, 514 F.3d at 285, the court finds that the Secretary has made a sufficient *prima facie* showing that Security Credit employees have performed activities that could potentially constitute overtime work for which they were improperly compensated under Section 207(a) of the FLSA, and that genuine issues of material fact exist regarding the determination whether that work activity was so negligible as to be considered *de minimis*. Accordingly, defendants are not entitled to summary judgment dismissing plaintiff's claim for unpaid overtime compensation.

## B.    Record-Keeping

In addition to the claim for unpaid overtime, the Secretary also alleges that defendants violated the FLSA's record-keeping requirements, set forth at Section 211(c) as follows:

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

29 U.S.C. § 211(c).  The Department of Labor regulations further require employers to preserve, for three years, records of the (1) total daily and weekly hours employees work; (2) employees' regular hourly rates of pay for each week that overtime is worked; (3) total daily or weekly straight time earnings and (4) total weekly premium pay for overtime hours. *See* 29 C.F.R. §§ 516.2-516.5.  Although a violation of these requirements "does not result in a penalty *per se*, . . . an employer's failure to produce evidence of the hours an employee worked and wages paid may result in the court having to approximate damages." *Genarie v. PRD Management, Inc.*, 2006 WL 436733, at *15 (D.N.J. Feb. 17, 2006) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. at 687-88); *see also Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1297 (3d Cir. 1991) ("In the absence of adequate employer records of employees' wages and hours, as required by the FLSA, the solution is not to penalize the employees by denying recovery based on an inability to prove the extent of undercompensated work, but rather to allow the employee or the Secretary to submit

sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred.").

Security Credit contends that the Archived Time Reports generated by the "hand scan" time clock, and the promulgation of policies instructing all collectors to accurately record their time at work, are sufficient as a matter of law to meet the FLSA's record-keeping requirements.  The Secretary responds that while the Archived Time Reports provide a record of the times collectors clock in and clock out, defendants' records do not provide any basis for aggregating this data to accurately reflect the total daily or weekly hours worked.  Instead, defendants calculate collectors' total hours merely by reference to their formal schedule of forty hours per week.

Based on its review of the submissions on file, the court finds that the Secretary has prevailed on this argument as well.  Simply put, the same evidence found sufficient to raise genuine issues of material fact regarding collectors' uncompensated "overtime" activities must likewise be deemed sufficient to raise a genuine issue as to whether the Archived Time Reports accurately reflect collectors' total daily and weekly hours worked.  Whether this evidence is also sufficient to satisfy the burden-shifting and damage calculation standards articulated by the Supreme Court in *Mt. Clemens* is a question best left for the trier of fact.

Accordingly, defendants are not entitled to summary judgment dismissing plaintiff's claim for violation of the FLSA's record-keeping requirements.

## **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (Item 38) is denied in its entirety.

A telephone conference with the court is scheduled for Wednesday, March 30, 2011, at 2:00 p.m. to discuss a schedule for further proceedings.  The court will initiate the call.

So ordered.

\s\ John T. Curtin

JOHN T. CURTIN
United States District Judge

Dated: 3/15                        , 2011
p:\pending\2008\08cv267.mar7.2011

-14-